UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLOBAL CROSSING
TELECOMMUNICATIONS, INC.,

Case No. 09-14686

HONORABLE SEAN F. COX
United States District Judge

Plaintiff

v.

MICHIGAN BELL TELEPHONE CO.
a/k/a AT&T MICHIGAN,

Defendant.
_____/

OPINION & ORDER GRANTING DEFENDANT'S
MOTION FOR PARTIAL DISMISSAL [Doc. No. 14]

Plaintiff Global Crossing Telecommunications, Inc. ("Global Crossing") filed this breach of contract and tort action against Defendant Michigan Bell Telephone Company a/k/a AT&T Michigan ("AT&T") on December 1, 2009 [Doc. No. 1]. The matter is currently before the Court on AT&T's Motion to Dismiss [Doc. No. 10], in which AT&T seeks dismissal of Counts V through IX of Global Crossing's Complaint. The parties have fully briefed the issues, and a hearing was held on April 22, 2010. For the reasons below, the Court **GRANTS** AT&T's motion [Doc. No. 10], and **DISMISSES** Counts V through IX of Global Crossing's Complaint.

BACKGROUND

Consistent with FED. R. CIV. P. 12(b)(6), the following are the relevant facts of this case as alleged in Global Crossing's Complaint [Doc. No. 1].

Global Crossing is a Michigan corporation that provides long-distance telephone service throughout the United States. [Complaint, Doc. No. 1, ¶1]. AT&T is also a Michigan corporation, and provides high-capacity "broadband" access services pursuant to contract. *Id*. at

1

¶2. Under FCC regulations, Global Crossing is considered a "nationwide interexchange carrier" ("IXC"), and AT&T is considered an "incumbent local exchange carrier" ("ILEC"). *Id*. at ¶¶1,2.

Pursuant to FCC regulations, IXCs like Global Crossing must purchase "last mile" connections from ILECS like AT&T that link a subscriber's location to the ICX network. *Id*. at ¶3. Such "last mile" connections are also known as "access services." Effective October 12, 2007, AT&T began providing high-volume "broadband" access services to IXCs pursuant to contract, on terms consistent with its "Guidebook" [*See* Excerpts from Guidebook, Pl.'s Ex. A, Doc. No. 1].

One such available broadband access service provided by AT&T is its "Dedicated SONET Ring Service" ("DSRS"). *Id*. at ¶4. AT&T's Guidebook states that AT&T will provide DSRS to IXCs as a "dedicated customized network," for the exclusive use of one customer. *Id*. DSRS is provided by AT&T in a variety of bandwidths, capable of carrying various levels of simultaneous telephone conversations. *Id*.

In 1994, Global Crossing ordered, and AT&T provided, an "OC-48" bandwidth DSRS[1] between AT&T and Global Crossing's facility in Southfield, Michigan ("the DSRS"). *Id*. at 9. AT&T warranted that it would provide the DSRS for Global Crossing's exclusive use, and that Global Crossing would have sole discretion to determine whether it would permit another company to occupy space on the DSRS. *Id*. Global Crossing used the DSRS continuously, from the signing of the contract between itself and AT&T in 1994 to the time this lawsuit was filed.

---

[1] "An OC-48 can carry up to 32,256 simultaneous conversations. An IXC orders an OC-48 facility when it anticipates handling a very large volume of calls from a given ILEC central office." [Pl.'s Complaint, Doc. No. 1, ¶6].

2

*Id*.  Global Crossing has not authorized any other companies to occupy space on the DSRS.

In October of 2008, Global Crossing undertook an internal investigation into whether it still needed the DSRS provided by AT&T.  *Id*. at ¶11.  During this investigation, Global Crossing discovered that 13 of its 32,256 slots on the DSRS were being used by third parties that Global Crossing had not authorized.  *Id*. at ¶12.  After its own investigation, AT&T determined that a software error had inadvertently assigned other users - who had contracted directly with AT&T in a manner similar to that of Global Crossing - to slots on the DSRS which AT&T had warranted would be for Global Crossing's exclusive use.  *Id*. at ¶16.  AT&T further acknowledged - according to Global Crossing's Complaint - that this practice had been going on since at least 1999.  *Id*. at ¶17.

Global Crossing filed this lawsuit on December 1, 2009.  Global Crossing argues that AT&T "obtained revenues from its uses of the [DSRS], which revenues AT&T has not accounted for or turned over to Global Crossing."  *Id*. at ¶20.  Global Crossing also argues that, by not giving it exclusive access to the DSRS, AT&T effectively provided Global Crossing with a "Shared Network Arrangement" - a product of AT&T's which allegedly costs $600,000.00 per year less than the DSRS.  *Id*. at 21.  Specifically, Global Crossing's complaint alleges the following nine causes of action against AT&T: 1) breach of contract/breach of warranty; violations of 2) Section 201(b), and 3) Section 203 of the Federal Communications Act, 47 U.S.C. § 151 *et seq*.; 4) attorney fees under Section 206 of the Federal Communications Act; 5) negligence; 6) common law conversion; 7) statutory conversion under M.C.L. § 600.2919a; 8) return of stolen property; and 9) unjust enrichment/constructive trust/accounting.

AT&T filed its motion to dismiss [Doc. No. 10] on January 29, 2010.  In that motion,

AT&T concedes that Global Crossing's contract and tariff-based causes of action - i.e., Counts I through IV of its complaint - are sufficiently pled to survive a Rule 12(b)(6) motion. [Def.'s Br., Doc. No. 10, p.1]. AT&T raises three arguments, however, in favor of dismissal for Global Crossing's claims sounding in tort and in equity: 1) that dismissal of all the tort claims is proper due to Global Crossing's failure to allege a legal duty separate and distinct from AT&T's contractual obligations [Def.'s Br., Doc. No 10, pp.4-6]; 2) that Global Crossing's claims for conversion should be dismissed because AT&T cannot convert its own property [Def.'s Br., Doc. No. 10, pp.6-10]; and 3) Global Crossing's claims in equity should be dismissed due to Global Crossing's adequate legal remedies at law. [Def.'s Br., Doc. No. 10, p.11]. Global Crossing opposes AT&T's motion. [*See* Pl.'s Br., Doc. No. 14].

## STANDARD OF REVIEW

AT&T bring the instant motion pursuant to FED. R. CIV. P. 12(b)(6). In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must treat all well-pled allegations in the complaint as true. *Kostrzewa v. City of Troy*, 247 F.3d 633, 638 (6th Cir. 2001). Dismissal is only proper if it, on the pleadings themselves, the plaintiff does not have a "reasonably founded hope" of making his or her case. *Bell Atlantic v. Twombley*, 550 U.S. 554, 127 S.Ct. 1955, 1970 (2007).

## ANALYSIS

The dispute between Global Crossing and AT&T in this action is essentially contractual in nature - and AT&T is not disputing Global Crossing's contract claims in this motion. Concurrent with its contractual claims, however, Global Crossing also advances legal theories sounding in tort law, as well as theories sounding in equity. As Global Crossing has not

4

evidenced legal duties owed by AT&T separate and distinct from its contractual obligations, dismissal of its tort claims is proper.[2] Further, as Global Crossing has failed to evidence the inadequacy of its remedies at law, dismissal of its equitable claims is also proper. For these reasons, the Court **GRANTS** AT&T's motion [Doc. No. 10], and **DISMISSES** Counts V through IX of Global Crossing's Complaint.

I. Global Crossing's Tort Claims Against AT&T [Counts V-VII].

In Counts V through VII of Global Crossing's Complaint [Doc. No. 1], Global Crossing advances causes of action for negligence [Count V], common-law conversion [Count VI], and statutory conversion [Count VII]. In its motion [Doc. No. 10, pp.4-6], AT&T argues that these three causes of action should be dismissed due to the absence of a legal duty owed by AT&T separate and distinct from its contractual obligations. The Court agrees.

"Under well-settled Michigan law, where a contract exists, a tort claim may only be maintained on the basis of a legal duty that is separate and distinct from the contractual obligation." *Consolidated Rail Corp. v. Grand Trunk Western Railroad Co.*, 2009 WL 3460334, *6 (E.D. Mich. Oct. 22, 2009), quoting *Rinaldo's Constr. Corp. v. Michigan Bell Tel. Co.*, 454 Mich. 65 (1997). Put another way, "if a relation exists which would give rise to a legal duty without enforcing the contract promise itself, the tort action will lie, otherwise not." *Id,* citing *Hart v. Ludwig*, 347 Mich. 559 (1956). This Court has previously recognized the sound policy reasons behind such a rule:

> [T]ort principles. . . are better suited for resolving claims involving unanticipated

---

[2] As Global Crossing has not alleged a duty owed by AT&T separate and distinct from its contractual obligations, dismissal of all of Global Crossing's tort claims is therefore warranted. As a result, the Court need not reach AT&T's alternative argument regarding Global Crossing's claims for common-law and statutory conversion.

5

> physical injury, particularly those arising out of an accident. Contract principles, on the other hand, are generally more appropriate for determining claims for consequential damage that the parties have, or could have, addressed in their agreement.

*Williams v. Scottrade, Inc.*, 2006 WL 2077588, *6 (E.D. Mich. July 24, 2006).

Pursuant to *Consolidated Rail*, therefore, the proper inquiry in this matter is whether AT&T owed Global Crossing "an independent duty, separate and distinct from its contractual obligations, that would give rise to the tort causes of action." *Consolidated Rail*, 2009 WL 3460334, *7. Global Crossing argues that it has alleged "a number of specific legal duties that are separate and distinct from those contained within the parties' contract. . . ." [Pl.'s Br., Doc. No. 14, p.6]. Specifically, Global Crossing argues that it has alleged the following:

- AT&T had a separate duty to obtain Global Crossing's permission before selling to other carriers the services that should have been reserved for Global Crossing's exclusive use (Compl. ¶23). . . .
- AT&T had a duty to obtain Letters of Authorization ("LOAs") and Connection Facility Assignments ("CFAs") before permitting other customers to access or purchase the services that should have been reserved for Global Crossing's use. . . .
- AT&T had a duty not to "misappropriate and convert" the services to which Global Crossing had an entitlement of exclusive use (Compl. ¶20). . . .
- AT&T had a duty not to misrepresent what it was selling to Global Crossing. . . .

[Pl.'s Br., Doc. No. 14, pp.6-8]. As AT&T argues in its reply brief [Doc. No. 17], however, each of these purported "duties" owed by AT&T to Global Crossing are encompassed in the contractual agreement between the parties.

The relevant facts of this case are analogous to those of *Consolidated Rail*. In that case, Grand Trunk claimed that Consolidated Rail had converted its railway tracks through Consolidated Rail's unauthorized use of those tracks. *Consolidated Rail* held as follows:

> This legal duty is the same legal duty that arises under its contract counterclaim: the duty not to utilize GTW's tacks in an unauthorized manner. GTW's attempt to rename this contractual duty in terms of a statutory conversion claim does not change the fact that the legal duty is the same. . . . As GTW has not alleged a legal duty separate and distinct from its contractual obligations, the statutory conversion counterclaim against CR is dismissed.

*Consolidated Rail*, 2009 WL 3460334, *8. The same is true in the instant case. In Global Crossing's claims for negligence, common-law conversion, and statutory conversion, Global Crossing has merely repackaged its contractual claims - utilizing the same legal duties arising under the contract between themselves and AT&T. As Global Crossing has failed to come forward with any legal duty owed to itself by AT&T, separate and distinct from AT&T's contractual obligations, dismissal of Global Crossing's tort claims is therefore proper.

II. <u>Global Crossing's Equitable Claims Against AT&T [Counts VIII & IX]</u>.

In Counts VIII and IX of Global Crossing's Complaint [Doc. No. 1], Global Crossing advances causes of action for "return of stolen property" [Count VIII] and for "unjust enrichment/constructive trust/accounting" [Count IX]. In its motion [Doc. No. 10, p.11], AT&T argues that these two causes of action - for equitable, as opposed to legal, relief - should be dismissed due to Global Crossing's adequate remedies at law. The Court agrees.

Michigan courts have consistently held that plaintiffs with an adequate remedy at law may not seek equitable relief under Michigan law:

> . . . [A]n independent action for equitable relief will not lie where there is a full, complete, and adequate remedy at law, absent a showing that there is some feature of the case peculiarly within the province of the court of equity.

*Romeo Inv. Ltd. v. Mich. Consolidated Gas Co.*, 2007 WL 1264008, *9 (Mich. App. May 1, 2007), citing *EEOC v. Balimoy Mfg. Co., Inc.*, 179 Mich. App. 748, 751 (1989); see also *Everett v. Nickola*, 234 Mich. App. 632, 637 (1999) ("an equitable remedy is neither necessary nor

7

appropriate where a resolution under the law is available"). "[T]he burden of proof is upon [the] Plaintiff[] to show that they do not have an adequate remedy at law." *Eyde v. Empire of America Fed. Savings Bank*, 701 F.Supp. 126, 130 (E.D. Mich. 1988).

Global Crossing concedes that its causes of action for "return of stolen property" [Count VIII] and for "unjust enrichment/constructive trust/accounting" [Count IX] are equitable in nature. [Pl.'s Br., Doc. No. 14, p.16]. Nonetheless, Global Crossing argues that dismissal of these claims would be improper at this time. The Court disagrees.

With respect to its accounting cause of action, Global Crossing argues that it "needs an accounting [] in order to ascertain the revenues AT&T obtained as a result of its decision to sell to third parties the services that must be assumed to be reserved for Global Crossing's use." [Pl.'s Br., Doc. No. 14, p.16]. However, "[a]n accounting is unnecessary where discovery is sufficient to determine the amounts at issue." *Boyd v. Nelson Credit Centers, Inc.*, 132 Mich. App. 774, 780 (1984). "In other words, equity will not take jurisdiction. . . where the account involved is based on a claim which, in effect, is merely for damages for breach of contract." *Lasala v. Gupta*, 2009 WL 2195102, *3 (Mich. App. July 23, 2009) (internal citation and quotation omitted). Global Crossing has provided no argument to the Court evidencing the inadequacy of discovery to determine the amount of its alleged damages. Dismissal of Global Crossing's claim for an accounting is therefore proper.

Global Crossing also argues that dismissal of its unjust enrichment claim, at this stage in proceedings, would be improper. Global Crossing argues as follows:

> Additionally, it goes without saying that Global Crossing is permitted to plead in the alternative in this stage of the proceeding. That is the purpose of Global Crossing's claim for. . . unjust enrichment. If the Court eventually determines that Global Crossing can be made whole pursuant to its contract claim, then the

> quasi-contract claim will of course be dismissed. . . . In the event the Court determines Global Crossing had no contract right to exclusivity, [however], then Global Crossing would be entitled to proceed on an unjust enrichment claim[.]

[Pl.'s Br., Doc. No. 14, p.16]. The Court disagrees.

In *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187 (2007), the Michigan Court of Appeals held that an action for unjust enrichment can only lie where no express contract exists covering the same subject matter between the parties:

> The theory underlying quantum meruit recovery is that the law will imply a contract in order to prevent unjust enrichment when one party inequitably receives and retains a benefit from another. However, a contract will be implied only if there is no express contract covering the same subject matter. Generally, an implied contract may not be found if there is an express contract *between the same parties* on the same subject matter.

*Morris Pumps*, 273 Mich. App. at 194 (internal quotations and citations omitted) (emphasis in original). Relying upon *Morris Pumps*, this Court has consistently dismissed alternatively-pled claims for unjust enrichment where an express contract between the parties covered the same subject matter. *See, e.g., Vergote v. Dawson*, 2009 WL 94538, *11 (E.D. Mich. Jan. 13, 2009) ("there is no claim for unjust enrichment when there exists a valid contract covering the *same subject matter*"); *Exide Tech. v. Kmart Corp.*, 2009 WL 1438729, *6 (E.D. Mich. May 20, 2009) ("Exide's claims of quantum meruit and unjust enrichment seek recovery on the same subject matter as the parties' express Agreement. Accordingly, Kmart is entitled to summary judgment of Exide's quantum meruit and unjust enrichment claims as a matter of law").

Global Crossing's argument regarding the outcome of the "exclusivity" contractual issue is similarly without merit. *Even if* the Court finds that "Global Crossing had no contract right to exclusivity," [Pl.'s Br., Doc. No. 14, p.16], *the same subject matter* is still encompassed within the parties' express contract. For these reasons, dismissal of Global Crossing's claim for unjust

enrichment is also proper.

Global Crossing's response brief [Doc. No. 14] advances no specific argument for why dismissal of its equitable claims for "return of stolen property" and for "constructive trust" would be improper at this time. As Global Crossing has failed to bring forth evidence why these claims are necessary - i.e., why no adequate remedy exists at law - dismissal of Global Crossing's claims for "return of stolen property" and "constructive trust" are also proper.

## CONCLUSION

For the reasons explained above, the Court **GRANTS** AT&T's motion [Doc. No. 10], and **DISMISSES** Counts V through IX of Global Crossing's Complaint.

**IT IS SO ORDERED**.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: May 17, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 17, 2010, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager